UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JERRY BEAN, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:20 CV 1509 CDP |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

### MEMORANDUM AND ORDER

Jerry Bean seeks to vacate, set aside or correct his sentence under 28 U.S.C. § 2255.  On July 6, 2017, Bean pleaded guilty to one count of interference with commerce by threats or violence, in violation of 18 U.S.C. §§ 2 and 1915(a) (Count I) and one count of brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c) (Count II).   ECF 39, 40, 41 in Case No. 4:17 CR 11 CDP.  On October 6, 2017, I sentenced Bean to 12 months imprisonment on Count I and 84 months on Count II, to be served consecutively to Count I, for an aggregate sentence of 96 months imprisonment, which was the sentence jointly recommended by the parties in the plea agreement.  ECF 61 in Case No. 4:17 CR 11 CDP.  Bean did not appeal his conviction and sentence.

Three years later, Bean filed this § 2255 motion *pro se*, raising the following claim for relief: Bean is "actually innocent" of brandishing a firearm in violation of

18 U.S.C. § 924(c) under Count II because, under the United States Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), his Hobbs Act conviction in Count I no longer qualifies as a crime of violence.

Section 924(c) prohibits the brandishing of a firearm in furtherance of a "crime of violence." 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" as a felony offense that either: (1) "has as element the use, attempted use, or threatened use of physical force against the person or property of another," § 924(c)(3)(A) (commonly known as the "force clause"); or (2) "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(3)(B) (commonly known as the "residual clause"). In *Davis*, the Supreme Court struck down the statute's residual clause on vagueness grounds. 139 S. Ct. at 2336. But *Davis* does not apply to predicate offenses that qualify under the force clause. *United States v. Wright*, 779 Fed. App'x 419, 420 (8th Cir. 2019). Hobbs Act robbery qualifies as a predicate offense under the force clause. *Diaz v. United States*, 863 F.3d 781, 783-84 (8th Cir. 2017); *Dean v. United States*, 2021WL 4448293, at *8 (N.D. Iowa Sept. 28, 2021) ("In short, *Davis* does not prevent Hobbs Act robbery from serving as a predicate offense for a § 924(c) conviction.").

Because Bean pleaded guilty to a Hobbs Act robbery and not conspiracy to commit a Hobbs Act robbery, his offense remains a crime of violence under §

924(c). I will deny Bean's motion without an evidentiary hearing for the reasons that follow.

## Discussion

**A. No Evidentiary Hearing is Required**

The records before me conclusively demonstrate that Bean has no right to relief. I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). "No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Id.* (internal quotation marks and citations omitted). The record here conclusively refutes the claims, so I will not hold an evidentiary hearing.

**B. Bean Did Not Plead Guilty to Conspiracy to Commit a Hobbs Act Robbery**

In this case, Bean was charged with, pleaded guilty to, and was sentenced for a Hobbs Act robbery in Count I of the two-count Indictment. Count I of the Indictment in Criminal Case Number 4: 17 CR 11 CDP charges that Bean, "acting with others known to the Grand Jury did unlawfully obstruct, delay, and affect commerce, as that term is defined in Title 18, United States Code, Section

3

1951(b)(3), and the movement of articles and commodities in such commerce, **by robbery**, as that term is defined in Title 18, United States Code, Section 1951(b)(1) in that the Defendant and others known to the Grand Jury, did unlawfully take and obtain an article or commodity to wit: US currency from a person or employer of DUNBAR ARMORED CO. against their will by means of actual and threatened force, violence and fear of injury to their persons.  In violation of Title 18, United States Code, Section 1951(a) and 2." ECF 2 in Case No. 4:17 CR 11 CDP (emphasis supplied).  Count II of the Indictment charges that "on or about April 4, 2016, in the City of St. Louis, within the Eastern District of Missouri, Jetty Bean, acting with others known to the Grand Jury, did knowingly possess and brandish one or more firearms in furtherance of the crime of violence, named in Count One, In violation of Title 18, United States Code, Sections 2 and 924(c)(1)." ECF 2 in Case No. 4:17 CR 11 CDP.

Bean pleaded guilty to both Counts charged in the Indictment on July 6, 2017.  As part of his guilty plea, Bean admitted in his plea agreement that the following facts were true:

> On April 4, 2016, DUNBAR ARMORED CO. (DUNBAR) was located in the Eastern District of Missouri. DUNBAR was in the business of collecting and transporting deposits for various institutions in the St. Louis area. Those institutions that serve as clients of DUNBAR conduct business throughout the United States, and therefore their activity would be in and effecting interstate commerce. DUNBAR also conducts business throughout the United States.

4

On April 4th, SHAYNE JONES (JONES) was employed by DUNBAR as a "jumper" and as such his job was to leave the armored truck (truck) and deliver or pick up US currency and other monetary documents from businesses or governmental agencies to deliver to banking institutions. On that day JONES told the DUNBAR employee (CT) whose job it was to drive the truck that he would drive the truck back to DUNBAR. On the drive back to DUNBAR, JONES decided to exit the highway to get gas. Once he gassed up the truck, JONES attempted to reenter the highway and acted like he was lost. JONES drove to a location at the intersection of Antelope and Switzer just east of N. Broadway. Once there, he turned the truck around and stopped next to an abandoned building and exited the truck and pretended to use a cell phone to contact the DUNBAR office. CT noticed a white vehicle parked alongside of the vacant building. BEAN and CHARLES JOHNSON (JOHNSON), exited the white car and approached the armored car and pointed firearms at JONES and CT and demanded the money bags. JONES went to the rear of the truck opened the door and started to throw bags of money to the ground. Once the money bags were on the ground, JONES and CT drove away and notified the police. During the robbery, CT's cellphone and wallet were taken as was JONES' company issued firearm along with his cellphone.

JOHNSON and BEAN loaded the white car with the money JONES threw from the armored car and drove from the scene. They went to BEAN's residence and divided the stolen money in to three shares and put the money into suitcases. BEAN took his share and JOHNSON took both his and JONES' share of the stolen money. According to JOHNSON, he then met with JONES and gave him his share.

 The day after the robbery, law enforcement recovered the white car burned on a deserted street. CT's wallet was found nearby. The owner of the car, BEAN, after initially denying any involvement gave a similar story to that of JONES concerning threats to assist in the robbery. Upon further reflection, BEAN then told law enforcement of his involvement in the robbery and the respective rolls of JONES and JOHNSON.

> BEAN worked at a local retail outlet with JOHNSON who approached him with the idea of the DUNBAR robbery telling BEAN that his cousin, JONES, worked for DUNBAR and was their inside guy. As plans developed, JONES provided DUNBAR shirts, his own personal firearm to be used in the robbery and cell phones to allow them to keep in touch as the plan developed.
>
> The robbery was initially to take place in the latter part of March just off of Highway 70 north of downtown. JONES told CT that he would drive back to DUNBAR and exit[] the highway and pull[] over on a deserted street. BEAN and JOHNSON were to approach the truck and JONES would pretend that he [was] an innocent victim like CT. BEAN and JOHNSON decided not to commit the robbery at that time.
>
> On April 4th, the day the robbery took place, while JONES was driving the truck back to DUNBAR he communicated via the cell phones he provided. He advised BEAN and JOHNSON that he was approaching the spot they selected for the fake robbery. A video taken in the truck shows him driving to the spot and turning around. In the video one can see the white car BEAN and JOHNSON were sitting in waiting. The video stopped as JONES cut the feed just before the two ran to the truck. Firearms were brandished as they were pointed at JONES and CT while JOHNSON made threats which made them to give up the currency.

ECF 39 at 2-4 in Case No. 4:17 CR 11 CDP.  During his plea colloquy, Bean was placed under oath and admitted that he read, understood, and signed the plea agreement.  ECF 73 at 7 in Case No. 4:17 CR 11 CDP.  Bean further admitted that all the facts listed in the plea agreement, including those recited above from pages 2, 3, and 4, were true.  ECF 73 at 10 in Case No. 4:17 CR 11 CDP.  When I specifically asked him if it was true that he and Johnson "approached the armored

6

car and pointed firearms . . . and demanded money" and then "loaded up the money and drove away with it" he answered "Yes, your honor." *Id*. at 11.

In addition to his admission to the facts constituting robbery, I held the following exchange with Bean about the charges to which he was pleading guilty:

> THE COURT: So you were charged in . . .a two count indictment. Count 1 charges that on or about April 4th of 2016 in the City of St. Louis, that you, acting with others, engaged in an armed robbery of Dunbar Armored Car. In Count 2 it charges on that same date, again acting with others, you knowingly possessed and brandished one or more firearms in furtherance of the crime of violence that was named in Count 1. So those are the – that's the indictment you are charged with. Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And that's what you are talking about pleading guilty to; do you understand?
>
> THE DEFENDANT: Yes, Your Honor.

ECF 73 at 4 in Case No. 4:17 CR 11 CDP. I outlined the elements of each offense, and the potential penalties, stating that "with regard to Count 1, which is the armed robbery count, the maximum penalty is imprisonment of not more than 20 years, a fine of not more than $250,000, or both prison and a fine." ECF 73 at 12-13 in Case No. 4:17 CR 11 CDP. Bean then indicated that he understood the maximum penalties he was facing on the armed robbery charge. ECF 73 at 13 in Case No. 4:17 CR 11 CDP. Being fully apprised of all rights he was waiving, Bean stated under oath that he was guilty of the crimes charged in Counts I and II. ECF 73 at 20-21 in Case No. 4:17 CR 11 CDP.

7

Bean was sentenced on October 6, 2017 to "12 months on Count I and 84 months on Count II to be served consecutively to Count I." ECF 71 at 5 in Case No. 4:17 CR 11 CDP.

The Indictment, guilty plea agreement and transcript, sentencing transcript, and oral pronouncement of sentence unequivocally demonstrate that Bean pleaded guilty to Hobbs Act robbery in Count I of the Indictment. These documents further demonstrate that robbery qualifies as the predicate crime of violence for his conviction on Count II of the Indictment.

Bean was never charged with, and did not plead guilty to, a Hobbs Act conspiracy. The confusion about his conviction on Count I stems from clerical errors which appear in the record. The "Pending Counts" section which begins the Clerk's docket sheet in the underlying criminal case incorrectly states that Count I is "CONSPIRACY TO INTERFERE WITH COMMERCE BY THREATS OF VIOLENCE." Case No. 4:17 CR 11 CDP. This incorrect information is then repeated in the cover page and in paragraph 1 of the Presentence Investigation Report (PSR), which say that the charge Bean pleaded guilty to in Count I was conspiracy to interfere with commerce by threats of violence in violation of 18 U.S.C. § 1951(a). ECF 55 in Case No. 4:17 CR 11 CDP. The Judgment then tracks the language of the PSR and also mistakenly describes Count I using the same language as the PSR. ECF 61 in Case No. 4:17 CR 11 CDP. It appears that

8

these errors probably began with the Criminal Cover Sheet, a document filed by the United States Attorney with each indictment, which incorrectly described the charge in Count I as conspiracy. ECF 1-1 in Case No. 4:17 CR 11 CDP. It is certainly regrettable that these errors occurred, and I certainly should have realized they were there when I signed the Judgment, but these errors do not mean that Bean was ever charged with, or convicted of, Hobbs Act conspiracy. He was not, as the indictment, guilty plea agreement, and transcript of the guilty plea make clear. Because his robbery conviction in Count I remains a crime of violence under § 924(c), he is not "actually innocent" of brandishing a firearm in furtherance of a crime of violence. As such, he is entitled to no relief under 28 U.S.C. § 2255 and his motion will be denied.

By this Memorandum and Order, the Court gives the parties notice under Federal Rule of Criminal Procedure 36 that it will correct the clerical errors in the underlying criminal Judgment entered in Case No. 4:17 CR 11 CDP and in the "pending charges" section of the docket sheet to reflect that Bean was convicted in Count I of interference with commerce by threats or violence, in violation of 18 U.S.C. §§ 2 and 1915(a).

## C. I Will Not Issue a Certificate of Appealability

As Bean has not made a substantial showing of the denial of a federal constitutional right, this Court will not issue a certificate of appealability. *See Cox*

9

*v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that Jerry Bean's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Bean has not made a substantial showing of the denial of a federal constitutional right.

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

                                                  _____
                                                  CATHERINE D. PERRY
                                                  UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2022.